AVIGAIL DIVEROLI,

     Plaintiff,

v.

AMERICAN AIRLINES, INC.,

     Defendant.

_____/

## OMNIBUS ORDER

**THIS CAUSE** is before the Court upon Defendant American Airlines' ("American Airlines" or "Defendant") Motion to Dismiss, (the "Motion"), ECF No. [9]. The Court has reviewed the Motion, the opposing and supporting submissions, the record and applicable law, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is granted.

### I.    BACKGROUND

On or about April 9, 2019, Plaintiff alleges she purchased a business-class ticket from Miami, Florida to Los Angeles, California. ECF No. [1], at ¶ 1. Plaintiff is a pregnant woman who allegedly "suffers from severe anxiety." *Id.* That same month, Plaintiff claims that a "medically necessary comfort animal," a dog-named "Simba" was added to reservation. *Id.* Plaintiff alleges she called American Airlines on two separate occasions to confirm that Simba could fly in business class because he was allegedly an "emotional support animal." *Id.* at ¶ 3.

On the day of her flight, Plaintiff alleges that she was flying with her husband, Menachem Mendel Gross and her grandfather.[1] *Id.* at ¶ 2. At some point during the flight, a flight attendant

---

[1] Avigail Diveroli is the only named Plaintiff in the instant action.

for American Airlines named "Regina," (herein referred to as the "Flight Attendant" or "Regina") noticed Simba and allegedly "[screamed] loudly that the dog [was] not allowed in the cabin," because it was an "FAA violation."[2] *Id.* at ¶ 4. The Flight Attendant then informed Plaintiff that she would be filing an FAA Complaint. *Id.* at ¶ 5. Plaintiff claims that the Flight Attendant yelled at Plaintiff and her husband the "whole trip." *Id.* at ¶ 5.

During the flight, the Flight Attendant took a picture of the kennel and Plaintiff. *Id.* at ¶ 6. At some point during the flight, Plaintiff was allegedly "downgraded," and moved to a different seat. *Id.* at ¶ 6. Plaintiff alleges she notified the Flight Attendant that she had "severe anxiety," however, the Flight Attendant stated that she "[did] not care." *Id.* at ¶ 7. The Flight Attendant also indicated that everything she was doing was ordered by the captain. *Id.*

Throughout the duration of the flight, Plaintiff alleges that other American Airlines flight attendants[3] "kept walking over to Plaintiff and apologizing" to her. *Id.* at ¶ 9. Plaintiff claims that the other flight attendants also called Regina a "sour apple" and that animals being in the aircraft cabin was a "known issue for her." *Id.*

After allegedly informing the Plaintiff that having an emotional support animal was against FAA regulations, she told Plaintiff she would be "cuffed" upon the plane's landing. *Id.* at ¶ 18. The Flight Attendant also told Plaintiff that Simba would need to be placed in an aircraft bathroom for the last hour of the flight. *Id.* While the dog was in its kennel, Plaintiff claims the Flight Attendant took the kennel and attempted to put it into an aircraft bathroom. *Id.* at ¶ 10. Plaintiff alleges that while doing so, the Flight Attendant started "slamming" the kennel with the bathroom door. *Id.* Plaintiff claims she then yelled, "[w]hat are you doing to my dog?" *Id.*

---

[2] Plaintiff does not define "FAA" in the Complaint, however, the Court assumes such reference is to the Federal Aviation Administration.

[3] In the Complaint, Plaintiff identifies the "other flight attendants" as Brian and Gary, whose badge identification numbers are 345206 and 50972 respectively.

Once the plane landed, Plaintiff was allegedly escorted off the plane by police. *Id.* at ¶ 11. As Plaintiff's husband was exiting the airplane, Plaintiff alleges that the captain rushed out and yelled "Don't bring that thing *sic* [onto] my plane! You see the belly of the plane, that's where he belongs. You see his belly, he belongs in the belly of the plane. Dogs should not be allowed on the plane." *Id.* at ¶ 24.

Plaintiff next claims her husband met with a representative from American Airlines who informed him that the airline had made a "mistake by letting a kennel that big on the plane." *Id.* at ¶ 12. The American Airlines representative also allegedly stated that Plaintiff "should not have been treated that way." *Id.* Plaintiff claims that the police ultimately concluded that the matter was a "private" issue and that no criminal violation had occurred. *Id.* at ¶ 13.

Plaintiff claims she is a "nervous wreck," is severely distraught, and that her anxiety has increased following the incident. *Id.* at ¶ 26. Plaintiff claims she still has not recovered from her mental pain and anguish. *Id.* Plaintiff alleges that as a direct and proximate result of American Airlines' failure to accommodate Plaintiff, Plaintiff sustained serious injuries and damages including, but not limited to, loss of ability to enjoy life, mental disability, past and future medical expenses, and other mental pain and damages. *Id.* at ¶ 27. Plaintiff asserts two causes of action against American Airlines, a claim for negligence and a claim for breach of contract.

As it relates to Plaintiff's negligence claim, she claims that as a common carrier, American Airlines owed a duty to its passengers and "in particular to Plaintiff, to provide carriage with a degree of care necessary to accommodate Plaintiff if she makes a reasonable request." *Id.* at ¶ 30. Plaintiff further alleges that American Airlines is duty bound to "exercise the requisite degree of care to prevent injury of any kind, and to maintain its aircraft in a safe condition." *Id.* at ¶ 31. Plaintiff claims that American Airlines not only failed to take all necessary measures to avoid the

subject accident, but actually "exacerbated" the situation. *Id.* at ¶ 31. Thus, Plaintiff alleges that American Airlines failed to take all necessary measures to avoid the incident alleged and breached its duty of care. *Id.* at ¶ 33. Plaintiff claims that she has "endured, and will continue to endure, great pain, suffering, inconvenience, embarrassment, mental anguish and emotional and psychological trauma" as a result of the incident. *Id.* at ¶ 34. Plaintiff also claims that she "has [] and will be required to expend large sums of money for medical treatment and care, rehabilitation and therapeutic treatment, and other services." *Id.* at ¶ 35. Plaintiff alleges as a direct and proximate result of American Airlines' failure to accommodate Plaintiff, she has sustained injuries and damages including, but not limited to, a "loss of mobility, loss of ability to enjoy life, disability, past and future medical expenses, and other injuries and damages." *Id.* at ¶ 36.

As for her breach of contract claim, Plaintiff claims that American Airlines has a Carrier Agreement, which can be found at the website: https://www.aa.com/i18n/travel-info/special-assistance/service-animals.jsp (the "Carrier Agreement"). *Id.* at ¶¶ 37-38. Plaintiff claims that the Carrier Agreement concerns the requirements for flying with service and emotional support animals. *Id.* at ¶ 39. Plaintiff claims that her dog met all of the requirements outlined in the Carrier Agreement. *Id.* at ¶ 41. Plaintiff claims American Airlines breached the Carrier Agreement by removing the dog from her possession and placing the dog in the aircraft bathroom. *Id.* at ¶ 44. In addition to the emotional distress allegedly experienced by Plaintiff due to Defendant's alleged breach of the Carrier Agreement, she claims that her kennel was damaged, and her dog Simba was "traumatized" by the event. *Id.* at ¶ 46.

Defendant has now moved to dismiss both counts, arguing that each fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. [8].

## II.    LEGAL STANDARD

Under Federal Rules of Civil Procedure 12(b)(6), a motion to dismiss is proper when there is a "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A pleading in a civil action must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy the Rule 8 pleading requirements, a complaint must provide the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). To survive a motion to dismiss, a complaint must contain factual allegations which are "enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While it "does not need detailed factual allegations," a complaint requires "more than labels and conclusions" and "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "naked assertion[s] devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557 (alteration in original)). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288-90 (11th Cir. 2010).

When reviewing a motion under Rule 12(b)(6), a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration Alliance*, 304 F.3d 1076, 1084 (11th Cir. 2002); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F.

Supp. 2d 1349, 1353 (S.D. Fla. 2009). However, this rule does not apply to legal conclusions; courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678; *Thaeter v. Palm Beach Cnty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006). Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 682).

## III.    DISCUSSION

### a.    *Negligence – Count I*

#### i.    <u>Preemption</u>

Defendant first argues that Plaintiff's negligence claim should be dismissed because Plaintiff has failed to plead that American Airlines breached any standard of care under the Air Carrier Access Act ("ACAA"). ECF No. [8]. Specifically, Defendant argues that because the allegations supporting Plaintiff's negligence claim relate directly to its alleged failure to accommodate the Plaintiff's emotional support animal, the ACAA preempts the standard of care that applies to Plaintiff's claim. *Id.* at 8. The Defendant further argues that ACAA "pervasively regulates what obligations airlines have to transport emotional support animals," and therefore, the ACAA preempts the state law standard of care for Plaintiff's claim. *Id.* Plaintiff's response seems to misconstrue Defendant's argument, as she argues that her negligence claim is not generally preempted under the ACAA, rather than addressing the issue of the standard of care. ECF No. [19], at 5-9.

The ACAA prohibits discrimination by air carriers based on disabilities. *Shotz v. Am. Airlines, Inc.,* 420 F.3d 1332, 1336–37 (11th Cir. 2005). While the Eleventh Circuit Court of

Appeals has yet to directly address whether the ACAA preempts general state-law negligence claims, it has explicitly held that "Congress did not intend to create a private right of action in a federal district court to vindicate the ACAA's prohibition against disability-based discrimination on the part of air carriers." *Love v. Delta Air Lines*, 310 F.3d 1347, 1359 (11th Cir. 2002). Other courts, however, have held that the ACAA may not create a stand-alone cause of action for disability discrimination, but does not preempt state-law negligence claims for injuries related to a failure to provide appropriate accommodations. *See, e.g., Gilstrap v. United Air Lines, Inc.,* 709 F.3d 995, 1010–11 (9th Cir. 2013); *Elassaad v. Independence Air, Inc.,* 613 F.3d 119, 132–34 (3d Cir. 2010).

Both parties cite to *Adler v. WestJet Airlines, Inc.*, 31 F. Supp. 3d 1381 (S.D. Fla. 2014), in their respective briefs. ECF No. [8], at 9; ECF No. [19], at 6. In *Adler*, another Court in this District held that that the ACAA did not result in express, conflict or field preemption with regard to the plaintiff's negligence claim. *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1385 (S.D. Fla. 2014). Moreover, the *Adler* Court also held that the ACAA may be relevant to the defendant airline's duty of care and noted that the plaintiffs in that case acknowledged this fact in their complaint. *Id.*

Here, unlike the case in *Adler*, the Complaint does not acknowledge that the applicable duty of care may be impacted by the ACAA and fails to address what duty of care the Defendant allegedly breached, beyond stating so in conclusory fashion. *See* ECF No. [1], at ¶ 30 ("[American Airlines] owed a duty to provide carriage with a degree of care necessary to accommodate Plaintiff if she makes a reasonable request."); *id.* at ¶ 31 ("[American Airlines] is also duty bound to exercise the requisite degree of care to prevent injury of any kind, and to maintain its aircraft in a

safe condition."); *id.* at ¶ 32 ("[American Airlines] . . . failed to take all necessary measures to avoid the subject accident.").

After a careful review of the Complaint, it appears that the Plaintiff is attempting to create a negligence claim out of the Defendant's failure to accommodate the Plaintiff's emotional support animal. Indeed, the only "specific" conduct referenced by the Plaintiff, related to the duty of care the Defendant has allegedly breached is that "[American Airlines] . . . remov[ed] Plaintiff's comfort animal." *Id.* at ¶ 33. As presently drafted, the Complaint appears to be an attempt to create a private cause of action for an alleged ACAA violation. To the extent Plaintiff's negligence claim is—as it appears to be—a claim for disability discrimination, it would be preempted by the ACAA and, thus, dismissal of the negligence claim is warranted.

Accordingly, the Court agrees that Plaintiff's negligence claim is due to be dismissed because the Plaintiff has failed to specifically identify what duty of care the Defendant is alleged to have breached beyond her claim that the Defendant failed to accommodate her emotional support animal. In the event that the Plaintiff can plead allegations sufficient to cure the negligence claim's defects, the Court will permit the Plaintiff leave to amend.

### ii. *Impact Rule*

As a second ground for dismissal of Plaintiff's negligence claim, Defendant argues that the claim is barred by Florida's impact rule. ECF No. [8], at 10. Specifically, Defendant contends that the impact rule prohibits a claimant in a negligence action from recovering damages for emotional or psychological distress unless the distress flows from physical injuries the plaintiff sustained from an impact. *Id.* Plaintiff argues that her claim is not barred by the impact rule because the claim falls under one of the rule's exceptions. ECF No. [19], at 9. Plaintiff asserts that a claimant

may recover from mental harm suffered where it relates to an owner witnessing the "malicious destruction" of a pet. *Id.*

Florida has a long history of disallowing damages for emotional distress in a negligence action, unless the emotional distress flows from physical injuries sustained in an impact. "The impact rule, which is well established in this state, requires that 'before a plaintiff can recover damages for emotional distress caused by the negligence of another, the emotional distress suffered must flow from physical injuries the plaintiff sustained in an impact.'" *S. Baptist Hosp. of Fla., Inc. v. Welker,* 908 So. 2d 317, 320 (Fla. 2005) (quoting *R.J. v. Humana of Fla., Inc.,* 652 So.2d 360, 362 (Fla.1995)). However, the Florida Supreme Court has stated that "the impact rule does not apply to any intentional torts such as defamation, invasion of privacy, and intentional infliction of emotional distress." *Fla. Dep't of Corr. v. Abril*, 969 So.2d 201, 206-07 (Fla. 2007). There are also certain exceptions, however, which apply to the impact rule in very limited circumstances. "Exceptions to the rule have been narrowly created and defined in a certain very narrow class of cases in which the foreseeability and gravity of the emotional injury involved, and lack of countervailing policy concerns, have surmounted the policy rationale undergirding application of the impact rule." *Rowell v. Holt,* 850 So.2d 474, 478 (Fla. 2003). One such exception that is relevant to the instant action, is that a party may recover damages related to an owner's emotional harm where it stems from the malicious destruction of a pet. *La Porte v. Associated Indeps., Inc.,* 163 So. 2d 267 (Fla.1964).

Here, the Court agrees with the Defendant that the Plaintiff has failed to allege facts sufficient to warrant the limited application of the exception to the Florida impact rule that she contends applies to her claim. Indeed, Plaintiff has failed to plead that the dog has suffered any physical damage at all, yet alone that the dog was "maliciously destroyed." In fact, the only damage

Plaintiff alleges that was sustained by her dog is not even pleaded in Plaintiff's negligence claim, but rather in her breach of contract claim. ECF No. [1], at ¶ 46. In Plaintiff's breach of contract claim, she alleges that the dog was "traumatized," but does not allege that the dog sustained any physical damage or injuries. *Id.* Upon a review of the Complaint, it is unclear what physical damages were sustained by the dog, if any, which would permit a Plaintiff to assert a claim to recover for her own emotional damages stemming from the incident. Thus, to the extent that the Plaintiff can plead that the dog was "maliciously damaged" as the exception to the impact rule would require, she is permitted to amend the Complaint to include such allegations.

### b. Breach of Contract – Count II

Although the parties have not raised the issue of standing, the Court properly considers standing as a threshold jurisdictional question prior to adjudication of the Motion before the Court. *Bischoff v. Osceola Cty., Fla.*, 222 F.3d 874, 877–78 (11th Cir. 2000) (holding that, where not briefed by the parties, "the district court correctly reached out and considered the question of standing *sua sponte*"). "Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" *DiMaio v. Democratic Nat. Comm.*, 520 F.3d 1299, 1301–02 (11th Cir. 2008) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982)). Critical to the case-or-controversy requirement of Article III is an inquiry into standing (*id.* (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992))), which "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 974 (11th Cir. 2005). The party invoking federal jurisdiction bears the burden of proving the essential elements of standing. *Lujan*, 504 U.S. at 561; *Elend v. Basham*, 471 F.3d 1199, 1205–06 (11th Cir. 2006).

"It is not enough that 'the [plaintiff]'s complaint sets forth facts from which [the Court] could imagine an injury sufficient to satisfy Article III's standing requirements.'" *Elend*, 471 F.3d at 1206 (quoting *Miccosukee Tribe of Indians of Fla. v. Fla. State Athletic Comm'n*, 226 F.3d 1226, 1229 (11th Cir. 2000) (citations omitted)). Rather, a plaintiff must satisfy three constitutional prerequisites of standing:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*DiMaio*, 520 F.3d at 1301–02 (11th Cir. 2008) (citing *Lujan*, 504 U.S. at 560–61); *see also Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010) ("Standing for Article III purposes requires a plaintiff to provide evidence of an injury in fact, causation and redressibility."); *Kelly v. Harris*, 331 F.3d 817, 819–20 (11th Cir. 2003) ("To have standing, a plaintiff must show (1) he has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to conduct of the defendant; and (3) it is likely, not just merely speculative, that the injury will be redressed by a favorable decision.").

Here, the Plaintiff alleges that American Airlines breached the Carrier Agreement by requiring that Simba be placed in the aircraft bathroom for the last hour of the flight. ECF No. [1], at 18. In the briefing, the parties dispute whether the Carrier Agreement is truly a contract. *See* ECF No. [8], at 12-16; ECF No. [19], at 12-13. Defendant argues that the Carrier Agreement is not a contract that could conceivably form the basis of a breach of contract claim because no

consideration was exchanged between the parties and the Defendant's obligation under the contract is illusory. ECF No. [8], at 15-16.

Defendant has attached to its Motion the Passenger Name Record ("PNR") for Simba, which identifies that Simba was not registered as an animal authorized to fly with Plaintiff. Rather, Simba was registered to accompany Plaintiff's husband, Menachem Gross. ECF No. [8], at n.1; *see also* Exh. A, ECF No. [8-1]. The Defendant also highlights that the PNR demonstrates that Simba was identified as a "pet," rather than an emotional support animal. *Id.* Rather than disputing this claim, Plaintiff argues that the Court should not consider the document because it is "outside the four corners of the Complaint." ECF No. [19], at 2.

Given the procedural posture in this case, the Court looks to the sufficiency of the allegations in the Complaint and any attached documents to the Motion central to Plaintiff's claims to determine standing. *Church v. City of Huntsville*, 30 F.3d 1332, 1336 (11th Cir. 1994); *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005). As such, the Court rejects the Plaintiff's argument that it may not consider the exhibit attached to Defendant's Motion because it is central to the Plaintiff's claim.

Moreover, even assuming that the Carrier Agreement was a contract, nowhere in the Complaint does Plaintiff plead she was a party to the agreement. *See generally* ECF No. [1]. In order to demonstrate that she has standing to bring a breach of contract claim, the Plaintiff must demonstrate that she was either a party to the contract or that she was an intended third-party beneficiary to the contract under Florida law. *See Bochese v. Town of Ponce Inslet*, 405 F.3d 964, 981-82 (11th Cir. 2005) ("It is undisputed that [plaintiff] was not a party to the ... [c]ontract.... As a non-party, to sue to enforce the contract, [plaintiff] can only establish standing if he was an intended third-party beneficiary....").

Here, Plaintiff does not establish that she is a direct party to the contract at issue in the Complaint. Therefore, the Complaint merely alleges that Plaintiff was damaged as a result of an alleged breach of a contract, which has been attached solely by hyperlink[4] in the body of the Complaint. ECF No. [1], at ¶ 38.

Accordingly, Plaintiff cannot satisfy the first prong of the *Lujan* test, as she has not stated that she was a party to the contract she claims was breached. Because as alleged, the Complaint fails to demonstrate that Plaintiff has standing to bring her breach of contract claim, Count II is due to be dismissed without prejudice. To the extent that the Plaintiff can plead she is a party in interest to the Carrier Agreement, the Court will permit her leave to amend.

### c. *Motion to Stay*

On October 29, 2019, Plaintiff file a Motion to Stay All Discovery, ECF No. [23] ("Motion to Stay"). In the Motion to Stay, the Plaintiff requests that all discovery be stayed in this action, pending the Court's resolution of the Motion to Dismiss. *See generally id.* In light of the Court's ruling on the pending Motion to Dismiss in the instant Order, the request made in the Motion to Stay is now moot.

## IV. CONCLUSION

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Motion to Dismiss, **ECF No. [8]**, is **GRANTED**. The Complaint is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is granted to leave to amend the Complaint ***no later than November 12, 2019***.

2. Plaintiff's Motion to Stay, **ECF No. [23]**, is **DENIED AS MOOT**.

---

[4] The hyperlink directs the Court to American Airlines' general terms governing travel with service and emotional support animals, where clearly Plaintiff is not mentioned. *See generally* ECF No. [1], at ¶ 38.

**DONE AND ORDERED** in Chambers at Miami, Florida, on November 1, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record